UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIR TREK, INC.,

     Plaintiff,

v.

    CASE No. 1:17-CV-1145

    HON. ROBERT J. JONKER

CAPITAL STEEL & WIRE, INC., et al.,

     Defendants.

_____/

## OPINION AND ORDER

### INTRODUCTION

This could be a case study in the market disconnect between patients, health providers and the parties that actually pay for health care services. Air Trek provided air ambulance services to patient Dustin Preston after he seriously hurt himself on vacation in Florida. Mr. Preston ultimately died as a result of his injuries, and neither he nor his heirs are parties in the case. Neither is the Florida hospital that solicited and received the original quote from Air Trek for what appeared on its face to be a price of $18,406, an amount Mr. Preston's employer-sponsored ERISA plan paid in full.

The parties Air Trek brought into this case are the ERISA plan itself, the employer sponsor of the plan, the insurance carrier for the plan and intermediaries the insurance company uses to review and negotiate disputed claims. And Air Trek's claim is not for any portion of the $18,406 on the original quote delivered to the Florida hospital—an amount the carrier has paid in full. Instead, Air Trek claims the $18,406 was just a deposit against the true cost of $241,905.00, for which it billed the Defendants. Air Trek ultimately seeks recovery here of $217,714.50, which it

says a negotiating agent of the insurance carrier agreed to pay in a settlement agreement. Air Trek candidly admits that it would not be seeking these additional amounts if the only available target defendants were Mr. Preston or his heirs.

Defendants all move for summary judgment on the basis that the state law claims are without merit and, furthermore, are preempted under ERISA. They further contend that Air Trek lacks standing to bring its ERISA claim. The Court heard argument on the motions in open court on August 28, 2019, and thereafter took the matter under advisement. (ECF No. 106). After careful review of the entire record, the Court concludes there is no genuine issue as to any material fact on the theories of the case as pleaded by Air Trek and that Defendants are entitled to judgment as a matter of law. For the reasons that follow, then, the Court grants the Defendants' motions and dismisses this case.

## BACKGROUND

### 1. Pre-Flight Matters

Non-party Dustin Preston was the insured in this case. He had an ERISA Welfare Benefit Plan through Defendant Capital Steel & Wire, Inc. ("CS&W"), the sponsor and plan administrator. (*See* CS&W Welfare Benefit Plan, ECF No. 76-9, PageID.720). In February 2015 Mr. Preston fell down some steps in the Sarasota, Florida area and lost consciousness. He was taken to Sarasota Memorial Hospital where he was put on life support. Doctors at the hospital told Mr. Preston's spouse, Kelly Preston, that her husband would never regain consciousness. (Preston Aff. ¶¶ 2-3, ECF No. 71-3, PageID.437). Ms. Preston asked that her husband be flown back home to Lansing, Michigan—both for a second opinion and, in the event he would not regain consciousness, for an opportunity for his family in Michigan to say goodbye. (*Id.* at ¶ 4).

On February 12, 2015, Sarasota Memorial Hospital contacted Air Trek to arrange a flight for Mr. Preston. Air Trek responded by sending a quote detailing its charges for the flight to Ms. Erin Moretti, a case manager in the hospital. (Moretti Dep. 9-10, ECF No. 71-12, PageID.469-470). The quote (ECF No. 71-1, PageID.431) appears on Air Trek letterhead and was addressed to Ms. Moretti from Ms. Roxanne J. Stanley, an Air Ambulance Coordinator. Following the introductory paragraphs, the quote stated: "Rate schedule is determined from published base rate of $14,500 and $195 Domestic/$215 International per patient loaded mile[.]" (ECF No. 71-1, PageID.431). The document further provided that "[p]rices below are discounted for prompt payment at time of service, hardship discount or deposit amount insurance for invoicing." (*Id.*). The next line contained the following information:

** Citation 2 Jet Aircraft     $ 18406     Flt Time: 3:04     Non Stop     (3 family)

(*Id.*).

After receiving the quote from Air Trek, Ms. Moretti contacted Defendant PHP Insurance, the plan administrator of CS&W's Welfare Benefit Plan, to obtain authorization for Air Trek's out of network services. Kellie Banko of PHP Insurance then reached out to Air Trek to verify the quote. Air Trek contends that during this conversation it was made clear that there would be additional charges beyond the charge listed. This included payment for mileage, the exact amount of which could not yet be determined. (ECF No. 91-8, PageID.1243-1244). Defendants disagree with this characterization. There is no additional pre-flight paperwork beyond the $18,406 quote. The factual dispute on this pre-flight conversation is legally immaterial on the ERISA claim, as discussed later in this Opinion. And Air Trek's state law claims rely on alleged post-flight promises and agreements not this pre-flight conversation, again as discussed later in this Opinion.

The parties agree that Ms. Banko provided authorization to fly Mr. Preston to Lansing on a written "Medical Resources Management Department Utilization Review Form." (ECF No. 71-14, PageID.550). They further agree that after PHP Insurance provided its authorization, the flight took place the next day on February 13, 2015 without incident. (See ECF No. 71-2, PageID.433). Unfortunately, after arriving in Lansing, Mr. Preston never regained consciousness and he later died.

### 2. *Post-Flight Matters*

#### A. *Air Trek Invoices GlobalCare for $241,905.00*

On February 17, 2015, Ms. Theresa Crosland, an Air Trek Director of Claims, sent a claim submission for Mr. Preston's flight to Defendant GlobalCare.[1] The packet included a health insurance claim form, a cover letter, a copy of PHP Insurance's authorization form, a copy of a services agreement completed by Ms. Preston, and a copy of the notes from the flight. (ECF No. 75-8). The claim form listed a total charge of $241,905.00 and noted that the flight had flown 1079 miles. (ECF No. 75-8, PageID.623). The cover letter addressed to GlobalCare noted that "this was a preauthorized claim" and Air Trek requested payment "per ERISA Law" within 15 days. (ECF No. 75-8, PageID.624).

---

[1] The parties disagree over the relationship between Defendant PHP Insurance and Defendant GlobalCare. Air Trek asserts that GlobalCare is a third-party administrator for PHP. (See Am. Compl. ¶ 5, ECF No. 8, PageID.53). But GlobalCare, in its brief, asserts that it is a "network management and re-pricing service provider" of the ERISA plan at issue. (ECF No. 75, PageID.564). In other words, it states its role is to negotiate and settle, for a fee, those claims providers such as Air Trek make to insurers, such as PHP Insurance. For purposes of deciding this motion, the Court accepts Air Trek's characterization of the relationship between these two defendants.

### B.  GlobalCare refers the Out of Network Claim to Consilium and Consilium Negotiates with Air Ambulance Billing

According to the deposition of Carol Lockwood, a GlobalCare Vice President of Operations, GlobalCare had an agreement with an entity doing business as Consilium that acted as a negotiation company for GlobalCare on out of network claims. (Lockwood Dep. 9, ECF No. 75-11, PageID.643).  So, after receiving this packet, GlobalCare referred Air Trek's claim for services to Consilium.

### 1.  Round One

On March 4, 2015, Consilium and Air Trek negotiated over a settlement amount.  On that day Ms. Amelia Kahiu with Consilium sent a fax to Ms. Crosland requesting settlement of the claim in exchange for "prompt payment, within 15 business days."  Ms. Kahiu requested Air Trek "fax the executed contracts" to her attention "to begin the payment process."  (ECF No. 92-1, PageID.1279).

The message attached a one page "Provider Claim Settlement Agreement & Release" ("release" or "settlement release"). (ECF No. 92-1, PageID.1272).  The release listed the client as "Globalcare-Preneg Claims" and contained several terms, including:

- Compensation would be $120,952.50 as payment in full for Air Trek's claim (50% of the billed amount).

- Air Trek would agree not to charge the patient (the Prestons) for the difference between the billed charges and the settlement amount.

- The client would "pay, generally within fifteen (15) days but not later than thirty (30) days" the settlement amount "reduced only by any deductibles, coinsurances and/or non-covered charges as defined by" the ERISA plan.

- The provider (Air Trek) understood and acknowledged "that the Provider's claim may not have been adjudicated by the Client or the Plan and may be disallowed in whole or in part." (ECF No. 92-1, PageID.1272).

These terms were then followed by two boxes. The first box had a caption stating: "Agreed to & Accepted." Within the space there was a blank provided for the name of the provider, with Air Trek's name filled in, and then empty spaces for the provider's mailing address, and the name, title, email address, signature and signature date of the employee acting on Air Trek's behalf. (*Id.*). The second box had a caption stating: "for Consilium use only" and had similar blanks providing for the name and signature of the individual signing for Consilium. The second box also had space for Consilium to fill out the effective date of the release. (*Id.*). Consilium did not sign the document before sending it.

## 2. *Follow-up Rounds*

Air Trek sent the release back to Consilium the same day unsigned. Instead of a signature, it provided a handwritten star in the space beneath the release terms: "*Counter Offer = need $234,647.85. (~97% of billed charges)." (ECF No. 92-1, PageID.1273). Consilium responded to the counteroffer with another message saying "Unfortunately, it is our client's policy that we can not do 3% discounts. However, I can increase the offer significantly in order to get this settled. I have attached the current settlement, and the client will still make payment in 15 business days." (ECF No. 92-1, PageID.1274). Consilium sent along an amended "Provider Claim Settlement Agreement & Release", the only difference being the settlement amount was raised to $193,524.00 (approximately 80% of the billed cost). (ECF No. 92-1, PageID.1275). Air Trek again sent back an unsigned copy of the release. In the same space as before there were two more stars: "* Counter

offer: Need $229,809.75 (~95% of billed charges) * Preauthorized, medically necessary." (ECF No. 92-1, PageID.1276).

### 3. Final Exchange

Following a conversation with Ms. Crosland, Ms. Kahiu sent another message to Ms. Crosland. She remarked "as per our discussion, this is the highest I am authorized to extend. Please fax the executed agreements to my attention in order to begin the payment process." (ECF No. 92-1, PageID.1277). This third unsigned release form was the same as the first two versions, except for the settlement amount, which was increased to $217,714.50 (approximately 90% of the billed cost). (ECF No. 92-1, PageID.1279).

Two days later, Cheyenne Lord, Air Trek's Director of Claims, completed the "Agreed to and Accepted Box" and signed the agreement with a date of March 6, 2015. (ECF No. 92-1, PageID.1280). However, the signed agreement crossed out a portion of one of the terms as follows: "Client [Globalcare-Preneg Claims] will pay, generally within fifteen (15) days ~~but not later than thirty (30) days,~~ the Settlement Amount[.]" Furthermore, in the same space as the previous counteroffers there was a star with a notation: "*want payment within 10 days but no later than 15 days. (NOT BUSINESS DAYS)." (ECF No. 92-1, PageID.1280). The signed release also appears to have been accompanied by a cover letter. The letter, which is attached as an exhibit to GlobalCare's brief, stated: "Attached is a signed negotiation. We agree to 90% but expect payment to be made within 10 calendar days, but no later than 15 calendar days." (ECF No. 75-15, PageID.675).

All iterations of offers and counter-offers were on the form reciting: "Provider [Air Trek] also understands and acknowledges that the Provider's claim may not have been adjudicated by the Client or the Plan and may be disallowed in whole or in part."

## C. PHP Insurance Pays $18,406.00

According to Defendants, Consilium submitted the release signed by Ms. Lord to GlobalCare and then to PHP Insurance. On March 10, 2015, PHP Insurance sent a message to GlobalCare that "the information the authorization nurse received from this provider is not matching to what the provider is billing. Due to the high dollar amount, the claim will have to go through our high dollar review process, so a 10 day payment guarantee is not possible." (ECF No. 76-2, PageID.683).

Then, on March 24, 2015, Suzanne Austin, a PHP Insurance claims team leader, reported "GlobalCare was given instruction by PHP not to negotiate [Air Trek's] claim. If you look in GlobalCare, you will see that there is no negotiated pricing on the claim. Air transportation for the member was authorized based on a quoted amount of $18,406.00 for a non-stop flight given by Air Trek to the discharge planner at Sarasota Memorial Hospital." (ECF No. 76-3, PageID.686).

Ultimately, PHP Insurance issued a check to Air Trek in the amount of $18,406.00—the dollar amount listed on the February 12, 2015 quote.[2] (ECF No. 76-6, PageID.703). Air Trek, through its billing department, then asked PHP Insurance why the negotiated amount on the release form it signed was not paid, and PHP Insurance responded that the amount was what was on the original quote. (ECF No. 76-5, PageID.699). Eventually, PHP Insurance told Air Trek that it would need to "appeal", but Air Trek wanted payment on the release it signed. (*Id.* at PageID.700-701).

---

[2] During his deposition, Air Trek's Chief Financial Officer, Aaron Carr, testified Air Trek would not be seeking any amount other than $18,406 if the Prestons did not have insurance. (Carr Dep. 23, ECF No. 82-1, PageID.1118).

### 3. *Procedural History*

Neither Consilium, nor any defendant, signed the document after it was signed by Ms. Lord. Air Trek then brought this case on December 28, 2017. (ECF No. 1). The First Amended Complaint (ECF No. 8) raises claims against the Defendants for breach of the settlement release that Ms. Lord signed on March 6, 2015 (Count One); Negligent and/or Intentional Misrepresentation related to the settlement release (Count Two); Promissory Estoppel related to the settlement release (Count Three); Unjust Enrichment / Quantum Meruit (Count Four); and for the Recovery of Benefits under Section 1132 of ERISA (Count Five). (ECF No. 8).

The three defendants have all filed dispositive motions.[3] (ECF Nos. 70, 74, 81). The matters have been fully briefed and the Court heard arguments on the motions on August 28, 2019. Thereafter the Court took the motions under advisement. The matters are ready for decision.

## LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to

---

[3] Defendant PHP has also filed a motion to strike the opinion and testimony of an Air Trek expert. (ECF No. 58).

find for the non-moving party.'" *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When a motion for summary judgment is "made and supported by competent admissible evidence, the nonmovant may not rest on his pleadings, but must come forward with affidavits or other admissible evidence setting forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "To determine whether a factual dispute is genuine the court inquires 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001) (quoting *Anderson*, 477 U.S. at 251-52).

## DISCUSSION

Air Trek has two types of claims in this case: (1) claims directly related to the alleged post-flight settlement; and (2) claims related to recovering the claimed value of the air ambulance services it provided. The settlement claims arise under three state law theories: (1) breach of contract; (2) promissory estoppel; and (3) negligent or intentional misrepresentation. As to these claims, the Court finds Air Trek has failed to create a triable issue of fact, and that Defendants are entitled to judgment as a matter of law. The benefit claims arise under two theories: (1) an ERISA claim for plan benefits; and (2) a state law theory of unjust enrichment. As to the ERISA claim, the Court finds Air Trek lacks standing because it is not a plan beneficiary and the plan itself prohibits assignment of benefit claims. As to the quantum meruit claim, the Court finds that ERISA preempts the claim. Accordingly, Defendants are entitled as a matter of law to judgment dismissing all claims.

## A. Settlement Claims

The fundamental problem with the settlement claims is that the parties never reached a final agreement on any settlement. Settlement agreements in Michigan must be in writing, *Michigan Chiropractic Ass'n v. Office of Fin. & Ins. Servs.,* No. 287597, 2010 WL 199583, at *7 (Mich. Ct. App. Jan. 21, 2010) (citing *Kloian v. Domino's Pizza, LLC*, 273 Mich. App. 449, 456 (2006) and noting "[t]o be enforceable, a settlement agreement must be in writing and signed by the party to be charged"), and the record here discloses that the parties never reached a final written agreement on terms. Moreover, all the offers and counter-offers the parties exchanged included written boilerplate making it clear that even if the negotiating agents reached terms on amount and payment schedule, the insurance company retained the right to final review up to and including a decision not to pay the claim at all. There simply is no enforceable contract of record. And the back up claims to get around the absence of a signed written agreement—promissory estoppel and misrepresentation—falter for related reasons: by the time any negotiating agent of the insurance company made any alleged promises or representations to Air Trek, the flight was long over and there was no reliance interest or misrepresentation damage that could establish a basis for relief. Accordingly, and for the reasons provided in more detail now, the Court finds Defendants are entitled to summary judgment on these claims.

### 1. *Merits - Breach of Contract*

Count One of the Amended Complaint alleges that the "parties had an Agreement whereby CS&W, through its agents GlobalCare and Consilium, agreed to pay Air Trek's claim for $217,814.50 for air ambulance transportation services." The Amended Complaint further contends that Defendant CS&W "materially breached the Agreement by failing to pay the balance due and owing pursuant to the Agreement." (Am. Comp. ¶¶ 26 & 27, ECF No. 8, PageID.55). The allged

agreement has nothing to do with the pre-flight quote or disputed phone call; it rests entirely on the theory of a post-flight settlement contract. Defendants allege that Air Trek cannot point to the existence of a binding agreement between the parties. The Court agrees.

"Under Michigan law, the elements of a breach of the contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)). Moreover, under Michigan law, agreements to settle litigation must be in writing. *See* MICH. CT. R. 2.507(G) ("An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney."). There is no signed writing here, and no basis to permit a fact-finder to infer any other type of agreement to settle.

As an initial matter, it is clear the only potential enforceable agreement in this record is the release that contains only Ms. Lord's signature dated March 6, 2015. (ECF No. 92-1, PageID.1280). While Air Trek's briefing contains fleeting references to a possible oral contract based on PHP Insurance's initial authorization (ECF No. 91, PageID.1172) this theory was not a part of Air Trek's Amended Complaint, which explicitly defined the agreement at issue in its breach of contract claim as the release signed by Ms. Lord. (Am. Comp. ¶¶ 20, 26, ECF No. 8, PageID.54-55). And during argument on the motion Air Trek's counsel confirmed that its breach of contract claim was tied only to post-flight activity. Accordingly, the question for decision is whether the release that was signed by Ms. Lord for Air Trek constitutes a valid contract between the parties. As a matter of law it does not on this record.

"A basic requirement of contract formation is that the parties mutually assent to be bound." *Hemlock Semiconductor Corp. v. Deutsche Solar GmbH*, No. 13-cv-11037, 2016 WL 3743130, at *17 (E.D. Mich. July 13, 2016) (quoting *Ayar v. Baymont Inns, Inc.*, No. 245775, 2004 WL 842402, at *2 (Mich. Ct. App. Apr. 20, 2004)).   In other words, "[b]efore a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Kloian v. Domino's Pizza, LLC*, 273 Mich. App. 449, 452, 733 N.W.2d 766, 771 (2006) (quoting *Pakideh v. Franklin Commercial Mortgage Group, Inc.,* 213 Mich. App. 636, 640, 540 N.W.2d 777 (1995)).   Here, the unsigned release that Consilium sent to Air Trek's billing agent on March 4, 2015 is best understood as an invitation for an offer, rather than an offer itself.

A basic principle of contract formation is that an offer is a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." RESTATEMENT (SECOND) OF CONTRACTS, § 24 (1981); *accord Eerdmans v. Maki,* 226 Mich. App. 360, 364, 573 N.W.2d 329 (1997).   The Restatement further provides that "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." RESTATEMENT (SECOND) OF CONTRACTS, § 26 (1981).   "Reason to know" depends not only on the words or other conduct, but also on the circumstances, including previous communications of the parties and the usages of their community or line of business." *Id.* at cmt. a; *see also Hemlock Semiconductor Corp.*, 2016 WL 3743130, at *17 (quoting *Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268, 273 (Mich. 1991)) (noting "[t]o determine if parties have assented to an agreement, Michigan courts 'use an objective test, looking to the expressed words of the parties and their visible acts.'").

There are no circumstances or objective indicia that Consilium (or any of the defendants') assented to the settlement release here.[4]  The parties all agree that Consilium sent an unsigned settlement release to Air Trek's billing agent and, furthermore, that neither Consilium nor any of the defendants in this case ever signed the document once it was returned by Ms. Lord.  In such situations the commentary to the Restatement shows the way and indicates one instance where there may be "reason to know" the putative offeror did not intend to conclude the bargain is where the party provides "unsigned documents or letters where the document is intended not as an offer but only as a step in the preliminary negotiation of terms."  RESTATEMENT (SECOND) OF CONTRACTS, § 26 cmt. e (1981).

And there are other circumstances that would provide a reasonable person reason to know that Consilium (and the other defendants) did not intend to conclude a bargain by sending along the unsigned release.  When sending the last version of the release, for example, Ms. Kahiu asked Ms. Crosland to "fax the executed agreements to my attention in order to begin the payment process."  (ECF No. 92-1, PageID.1277).  This is not, as Air Trek contends, a visible act of assent demonstrating an offer by Consilium.  To the contrary, Ms. Kahiu's message that the executed documents would "begin" the payment process demonstrates that Air Trek's assent would not have concluded the parties' bargain.  Indeed the quoted term means "[t]o open operations upon or in reference *to* (any action), to set oneself effectively *to do* (something), to be at the point of first contact with; to enter upon, take the first step, do the first or starting part; to commence, to start."

---

[4] The Amended Complaint alleges only that Defendant CS&W materially breached the settlement release.  CS&W, it alleges, worked through its agents GlobalCare and Consilium to agree to the purported settlement amount.  (Am. Compl. ¶¶ 24-28).  Air Trek has expanded upon this theory in its briefing by bringing in the other defendants, including PHP Insurance, under an agency theory.  The unrebutted record, however, is that GlobalCare was never a party to the agreement and made no representations to Air Trek.  It simply was never a part of the events that Air Trek complains of.  This constitutes an additional reason for granting GlobalCare's motion

*Oxford English Dictionary* (online ed. 2019), http://www.oed.com (last visited Sept. 26, 2019); and "to perform or execute the first part of an action, activity, or procedure." *Merriam-Webster Unabridged* (online ed. 2019), http://unabridged.merriam-webster.com/unabridged/begin (last visited Sept. 26, 2019).

Moreover, boilerplate terms in the unsigned form demonstrate further action would be necessary before the insurance company or anyone negotiating on its behalf would commit to paying any portion of the claim. The last line of the first paragraph of the release provided that Air Trek "underst[ood] and acknowledge[d] that [its] claim may not have been adjudicated by [GlobalCare] or the [insurance plan] and may be disallowed in whole or in part." (ECF No. 92-1, PageID.1280). "A contract is not formed where the purported acceptance is expressly subject to another's approval." *Parr v. Bank of New York Mellon Corp.*, No. 10-13167, 2011 WL 768102, at *4 (E.D. Mich. 2011) (citing *Modern Globe, Inc. v. 1425 Lake Drive Corp.*, 340 Mich. 663, 668, 66 N.W.2d 92, 94-95 (Mich. 1954)). For these reasons, the Court concludes that even when viewed in the light most favorable to Air Trek, no reasonable fact finder could construct an enforceable contract out of the unsigned release sent to Air Trek on March 4, 2015.

Moreover, after Ms. Lord signed the settlement release for Air Trek and returned it with proposed changes, no one signed on behalf of the carrier. Ms. Lord wrote: "want payment within 10 days but no later than 15 days." (ECF No. 92-1, PageID.1280). In addition, Ms. Lord crossed out the portions of the release document that conflicted with her performance request, namely, the provisions stating that payment would be made not later than 30 days. (*Id.*). This means Ms. Lord was proposing a deal conditioned on the carrier's agreement to her newly proposed terms. This is confirmed by the cover letter accompanying the fax that Ms. Crosland sent back to Consilium which stated that Air Trek was sending back a "signed negotiation" and that "We agree to 90%

*but* expect payment to be made within 10 calendar days, but no later than 15 calendar days." (ECF No. 75-15, PageID.675) (emphasis added). Under the Restatement, these alterations mean the offer and counter-offer process are continuing, and there is no enforceable agreement. *See* RESTATEMENT (SECOND) OF CONTRACTS, §§ 39, 59 (1981).

The Court concludes there is no enforceable settlement contract between Air Trek and any of the Defendants. And without a contract, it is patent there can be no breach of contract claim. Defendants are entitled to summary judgment on Count One of the Amended Complaint.

### 2. *Merits - Negligent / Intentional Misrepresentation*

Air Trek next brings claims for "Negligent and/or Intentional Misrepresentation" (ECF No. 8, PageID.55-56). Again, the claim is based exclusively on alleged post-flight representations tied to the settlement negotiations. Air Trek claims that Defendants represented they would pay for the services when Air Trek accepted the settlement release, that they knew such representations were false and intended for them to be relied upon in order to induce Air Trek to agree to the release, that Air Trek did rely on those representations, and as a result Air Trek has been deprived of payment due under the release. (Am. Compl. ¶¶ 30-33, ECF No. 8, PageID.55-56). These assertions, which relate entirely to events that occurred after Air Trek flew Mr. Preston to Lansing, fail to establish a case of negligent or intentional misrepresentation.

> A claim for fraudulent misrepresentation generally requires that: (1) the defendant made a material misrepresentation; (2) that representation was false; (3) when the defendant made the representation, the defendant knew that it was false or made it recklessly, without knowledge of its trust as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damages

*German Free State of Bavaria v. Toyobo Co.*, No. CIV.A. 1:06-CV-407, 2007 WL 2986475, at *5 (W.D. Mich. Oct. 10, 2007) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 247

N.W.2d 813, 816 (Mich. 1976)). A claim for negligent misrepresentation requires a similar showing, except for the requisite mental state. *See Fejedelem v. Kasco*, 269 Mich. App. 499, 502 (2006) ("A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.") (internal quotation marks and citation omitted).

Air Trek cannot show that it justifiably relied to its detriment on a material misrepresentation in the post-flight settlement negotiations. Air Trek says it relied on the communications from Consilium that payment would occur if Air Trek accepted the offer. (ECF No. 91). As noted above, on March 4, 2015, Ms. Kahiu sent a message to Ms. Crosland stating "Please fax the executed agreements to my attention in order to begin the payment process." (ECF No. 92-1, PageID.1277). Air Trek has not shown how this representation was false. Even if it was, Air Trek's reliance was not reasonable. A reasonable person would not understand a statement that the payment process would "begin" upon a party's signature on a document to conclude that process or to foreclose the possibility that subsequent events might mean no payment would be made. Furthermore, alleged "[m]isrepresentations must relate to past or existing facts, and a 'promise regarding the future cannot form the basis of a misrepresentation claim.'" *German Free State of Bavaria*, 2007 WL 2986475, at *5 (quoting *Forge v. Smith,* 458 Mich. 198, 580 N.W.2d 876, 884 (Mich. 1998)). Ms. Kahiu's statements about the process of a future payment on a future act—Air Trek's signature—do not relate to past or existing facts. These assurances on future contractual performance fail to amount to misrepresentation. And the document itself to which Air Trek points expressly warns that the carrier still has to decide whether it will pay the claim.

Air Trek also cannot show that it detrimentally relied on the communications from Consilium. Plainly, it could not have relied on these statements to perform the February 13, 2015 flight—the complained of statements were not made until March 4, 2015, nearly three weeks after the flight took place. And the act that Air Trek alleges it undertook in reliance on Ms. Kahiu's statements was to sign the settlement release. Air Trek cannot claim that this act inured to its detriment because that release never had any contractual force. In sum, there is no genuine issue of material fact that Air Trek fails to satisfy the elements of its misrepresentation claims.

### 3. Merits- Promissory Estoppel

Air Trek's allegations in Count Three (promissory estoppel) are similar to those raised in its misrepresentation claim. Air Trek again basis its claim on post-flight events and alleges that "Defendants individually and through their authorized agents made representations to Air Trek that Air Trek would be paid for its services if it agreed to reduce its claim and accept the amounts stated in the Agreement" and that "Air Trek reasonably relied to its determinant on Defendants' representations and signed the Agreement in reliance on Defendants' representations that they would pay Air Trek's claim for such services." (Am. Comp. ¶¶ 35-36, ECF No. 8, PageID.56).

"The elements of a claim for promissory estoppel claim consist of (1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided." *Kostanko v. MVM, Inc.*, 365 F. Supp. 3d 881, 886 (W.D. Mich. 2018) (quoting *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151 (2008)).

Air Trek's claim fails at the first element because the promise it seeks to enforce does not appear in the record. Indeed, Air Trek has not shown that Ms. Kahiu, or any defendant, promised

Air Trek it would be paid the $217,714.50. All it has pointed to are the communications as part of the post-flight negotiation that the payment process would "begin" if Air Trek signed the settlement release. The action that Air Trek alleges it undertook in reliance or forbearance on these assurances is Ms. Lord's signature on the settlement release. (Am. Compl. ¶ 36, ECF No. 8, PageID.56). That document never took effect, and so circumstances do not require the enforcement of any promise here to avoid an injustice.

## B. Benefit Claims

### 1. ERISA Preemption – Quantum Meruit

Count Four of the Amended Complaint raises a claim for unjust enrichment. Air Trek asserts that Defendants obtained a benefit when it flew Mr. Preston on a medically-necessary flight on February 13, 2015. It argues that by providing this medically-necessary service it "conferred a benefit upon Defendants, as Defendants were obligated under the Plan to pay for medically-necessary services." (Am. Compl. ¶ 43, ECF No. 8, PageID.57). Earlier, the Amended Complaint defined the Plan as CS&W's Employee Benefit Plan. That Plan, it further averred, was "an 'employee welfare benefit plan' and 'employee benefit plan' within the meaning of" the ERISA statute at 29 U.S.C. §§ 1002(1),(3). (Am. Compl. ¶ 3, ECF No. 8, PageID.53).

Air Trek's quantum meruit claim under state law is preempted by ERISA. ERISA "supercede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). This provision is "deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). "In keeping with the Supreme Court's recognition of the broad scope of ERISA preemption, the Sixth Circuit has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003). A state law cause of

action is preempted if it is connected to or references an ERISA plan. *Cromwell v. Equitor-Equitable HCA Corp.*, 944 F.2d 1272, 1275-76 (6th Cir. 1991).

Air Trek does not dispute that the Plan qualifies as an ERISA plan. And Air Trek's claims clearly relate to the Plan. Indeed, Court Four alleges the Defendants improperly denied Air Trek payments for a medically-necessary service provided under the Plan. Any right Air Trek has to payment for the provides services arise out of the Plan's provisions because there is no agreement other than the Plan that governs the parties' relationship. Consequently, Plaintiff's quantum meruit claim, if successful, would affect the manner of administration of the Plan, and would provide other potential beneficiaries an alternative enforcement mechanism. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 217 (2004) (noting ERISA's enforcement provisions were meant to foreclose alternative enforcement mechanisms that attempt to remedy violations of rights guaranteed by ERISA).

To be sure, ERISA does not preempt an action "too tenuous, remote or peripheral to warrant a finding that the action 'relates to' the plan." *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin.,* 195 F.3d 803, 807 (6th Cir. 1999) (citations omitted). But the Court does not believe, as Air Trek asserts, that this is one of those cases. The obligation to pay that Air Trek points to in its Amended Complaint on this claim arises not under the settlement agreement but under the ERISA-governed plan itself: "Defendants were obligated under the Plan to pay for medically-necessary services." (Am. Compl. ¶ 43, ECF No. 8, PageID.57). There is no question of genuine dispute but that Air Trek's quantum meruit claim relates to an employee benefit plan under ERISA and, consequently, is preempted.

## 2. *Lack of Standing – ERISA Claim*

Around the same time that the Sarasota Memorial Hospital was working with PHP Insurance and Air Trek to arrange the flight for Mr. Preston to Lansing, Air Trek asked Ms. Preston to sign a "Services Agreement." Among other things, this agreement assigned Air Trek "all medical and ambulance benefits (Air or Ground), to include major medical benefits to which [Mr. Preston was] entitled." (ECF No. 75-8, PageID.626). In Count Five, Air Trek brings a claim under ERISA, seeking to recover the costs of the medical services it provided to Mr. Preston. Defendants contend Air Trek lacks standing to bring this claim under an anti-assignment provision of Mr. Preston's insurance plan. The Court agrees.

Air Trek brings Count Five under 29 U.S.C. § 1132(a)(1)(B). The statute provides that a civil action may be brought by a "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* Air Trek, a provider of medical services, is neither a participant or beneficiary of the plan. However, "[a] medical provider has standing to bring a civil action under ERISA to enforce the terms of a ERISA plan if it has received a valid assignment of benefits from the beneficiary or participant of the medical plan. " *Tendercare (Michigan), Inc. v. Dana Corp.*, No. 02-72263, 2002 WL 31545992, at *3 (E.D. Mich. 2002) (Borman, J.) (citing *Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1277 (6th Cir. 1991)); *see also Michigan Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Michigan,* 139 F.3d 546, 550 (6th Cir. 1998)). The assignment, though, must be "valid". And "the majority of federal courts . . . have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision." *Physicians Multispeciality Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004).

Defendants contend that Ms. Preston's assignment of rights to Air Trek was invalid under the anti-assignment clause in Mr. Preston's insurance Plan. They point to Section 8.4 of Mr. Preston's plan, which provided:

> **Section. 8.4   Non Alienation of Benefits.** No right or benefit provided for under any of the benefit programs will be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge and any attempt to do so will be void. However, this non-alienation provision will neither be construed to restrict or forfeit any subrogation rights of the Employer under the Plan nor prevent you from directing the Employer to pay expenses directly to a provider of services or products if those expenses are otherwise reimbursable to you under the Plan. In such event, the Employer shall be relieved of all further responsibility with respect that particular expense.

(ECF No. 71-10, PageID.461).

In its brief, Air Trek concedes "that an unambiguous anti-assignment provision in an ERISA plan is valid and enforceable." (ECF No. 92, PageID.1258). But it notes that some courts have found insurance plans had waived any argument relating to an ERISA plan's anti-assignment provision through the course of dealing. (ECF No. 91, PageID.1184). Courts within the Sixth Circuit, however, have generally found that standing under ERISA cannot be waived. *Tendercare (Michigan), Inc. v. Dana Corp.*, 2002 WL 31545992, at *4; *see also Griffin v. Comm. of the UAW Retiree Med. Benefits Tr.*, No. 16-12002, 2016 WL 6777854, at *3 (E.D. Mich. Nov. 16, 2016) ("to the extent plaintiff is alleging waiver of the anti-assignment clause, courts do not recognize waiver in the ERISA context."). The cases cited by Air Trek are distinguishable. In *Hermann Hospital v. MEBA Med. & Benefits Plan*. 959 F.2d 569, 574 (5th Cir. 1992), the plan first raised the issue of the provider's standing more than three years after the underlying events took place and, furthermore, involved a form from the insurance plan that "expressly provided that benefits payable under the Plan could be assigned and that assignment could be effectuated by" additional

actions that were completed by the beneficiary. *Id.* at 574-75. This case lacks such a form providing for the assignment of benefits. And other cases cited the law of different states, such as New Jersey, that is not applicable here. *See Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. CIV.A.06-0462(JAG), 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007). Moreover, the course of dealing in this case is not plainly inconsistent with Defendant's position on assignment. The originating message from Ms. Kahiu, for example, noted that Consilium was seeking to settle a claim for one of Air Trek's patients and that she was attaching "the paperwork needed to assist your patient" with this matter. (ECF No. 92-1, PageID.1279). The Prestons, then, were always at the forefront of Defendants' dealings. For these reasons, the Court concludes Air Trek lacks standing under ERISA to bring Count Five.[5]

## CONCLUSION

This case illustrates the difficulty, complexity, and potential unfairness that can result in the often-convoluted healthcare payment chain from an ERISA-covered health plan to a service provider. For better or for worse, the ERISA statute and interpretive case law have created a forceful preemption fence around ERISA plans and their sponsors and insurers. A provider like Air Trek has a claim for health care benefits only under ERISA itself and then only in accord with

_____

[5] During oral argument, the Court raised the possibility of an unjust result where a provider's state law claims are preempted under ERISA and the party is then found to lack standing to bring an ERISA claim. *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna, Inc.*, 857 F.3d 141, 148 (2017) (noting this tension in the context of a complete preemption analysis under Section 1132 to determine subject-matter jurisdiction on removal). While this argument may have bite in cases where preemption is read in too expansive a manner, especially in assessing removability, this is not one of those cases. This case was originally filed in this Court and the pleading in this case asserts that Defendants' obligation to pay arises under the ERISA governed plan, which brings Air Trek's quantum meruit claim squarely within the defensive preemption of Section 1144(a). Moreover, Air Trek candidly acknowledges that it would not be bringing this claim at all if the only target defendant was Mr. Preston or his heirs, but that its calculus is different with an insurance company. This admission undermines the equitable underpinnings of Air Trek's claims.

the written terms of the ERISA plan. Here, that Plan makes it impossible for a provider to bring a successful ERISA claim because the Plan precludes assignment of benefits. And any state law end run of the ERISA plan is preempted.

With the ERISA fortress intact, Air Trek turns to its alternate state law theories based on an alleged post-flight settlement agreement between the parties. But the record demonstrates there was never an enforceable settlement agreement, let alone a written settlement agreement. Nor does the record create a genuine issue of fact regarding claimed post-flight promises or misrepresentations that create a potential basis for liability.

Air Trek would, of course, have had the possibility of proceeding directly against Mr. Preston and his heirs, either under the Services Agreement Ms. Preston signed, or potentially a quasi-contract theory. If found responsible, Mr. Preston or his spouse could have brought their own ERISA claim for any benefits due under the Plan. But this is a pathway Air Trek chose not to take. We can all understand why. But when all other pathways of potential recovery are blocked factually or legally, then Air Trek must accept the consequences of its decision not to pursue the one remaining path of potential recovery.

**ACCORDINGLY, IT IS ORDERED:**

1. Defendant PHP Insurance's Motion for Summary Judgment (ECF No. 70); Defendant GlobalCare, Inc.'s Motion for Summary Judgment (ECF No. 74); and Defendant CS&W's Motion for Summary Judgment (ECF No. 81) are **GRANTED** to the extent detailed in this Opinion and Order and this case is **DISMISSED.**

2. Defendant PHP Insurance's Motion to Strike (ECF No. 58) is **DISMISSED AS MOOT.**


Dated:   October 2, 2019          /s/ Robert J. Jonker
                                ROBERT J. JONKER
                                CHIEF UNITED STATES DISTRICT JUDGE